IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

LISA T.,[1]

    Plaintiff,

v.

COMMISSIONER OF SOCIAL
SECURITY ADMINISTRATION,

    Defendant.

Case No. 6:24-cv-01279-JR

OPINION AND ORDER

RUSSO, Magistrate Judge:

    Plaintiff Lisa T. brings this action for judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying her application for continuing Title II Disability Insurance Benefits under the Social Security Act ("the Act"). All parties have consented to allow a Magistrate Judge enter final orders and judgement in this case in accordance with Fed. R. Civ. P. 73 and 28 U.S.C. § 636(c). For the reasons set forth below, the Commissioner's decision is affirmed, and this case is dismissed.

---

[1] In the interest of privacy, this opinion uses only the first name and initial of the last name of the non-governmental party or parties in this case. Where applicable, this opinion uses the same designation for a non-governmental party's immediate family member.

Page | 1 – OPINION AND ORDER

**PROCEDURAL HISTORY**

Born in 1980, plaintiff alleges disability beginning June 21, 2013, due to cirrhosis of the liver, uncontrollable right-hand shaking, and chronic constipation. Tr. 363. On February 26, 2014, plaintiff was found disabled beginning on June 21, 2013. Tr. 249. On April 3, 2019, following a continuing disability application, plaintiff was found no longer disabled. Tr. 363-77. This finding was upheld upon reconsideration. Tr. 378. On June 26, 2023, she appeared without representation at a hearing before Administrative Law Judge ("ALJ") Shawn Bozarth, wherein plaintiff testified, as did a vocational expert ("VE"). Tr. 378-302. On August 7, 2023, the ALJ issued a decision finding plaintiff not disabled. Tr. 249-66. After the Appeals Council denied a request for review, plaintiff filed a complaint in this Court. Tr. 1-7.

**CONTINUING DISABILITY ANALYSIS**

In order to determine whether a claimant continues to be disabled following a determination by Disability Determination Services ("DDS"), the Commissioner follows a seven-step evaluation process. 20 C.F.R. § 416.994.

At step one, the claimant's disability continues if the Commissioner determines the claimant has an impairment or combination of impairments that meet or medically equals the criteria of an impairment(s) listed in 20 C.F.R. part 404, subpart P, appendix 1. 20 C.F.R. §§ 416.920(d), 416.925, 416.926, 416.994(b)(5)(i).

At step two, the Commissioner must determine whether the claimant has had "medical improvement." 20 C.F.R. § 416.994(b)(5)(ii). Medical improvement is defined as "any decrease in the medical severity of your impairment(s)," and is based on "symptoms, signs, or laboratory findings associated with your impairment(s)." 20 C.F.R. § 416.994(b)(1)(ii).

At step three, the Commissioner determines whether there has been medical improvement in the claimant's ability to work, meaning their ability to perform basic work activities has increased. 20 C.F.R. §§ 416.994(b)(1)(iii), 416.994(b)(5)(iii). If the Commissioner finds there is medical improvement in claimant's ability to work, the Commissioner proceeds to step five.

At step four, the Commissioner must determine whether an exception to medical improvement applies. 20 C.F.R. § 416.995(b)(5)(vi). If the Commissioner finds an exception under 20 C.F.R. § 416.994(b)(3) applies, the Commissioner proceeds to step five. If the Commissioner finds an exception under 20 C.F.R. § 416.994(b)(4) applies, the claimant is no longer disabled. If the Commissioner finds no exceptions, the claimant's disability continues.

At step five, the Commissioner determines whether the claimant's current combined impairments are severe. 20 C.F.R. § 416.994(b)(5)(vi). If the claimant's combined impairments do not significantly limit the claimant's ability to perform basic work activities, they are no longer disabled. If the claimant's impairments limit their ability to perform basic work activities, the Commissioner proceeds to step six.

At step six, the Commissioner assesses the claimant's residual functional capacity ("RFC") to determine if the claimant can perform past relevant work. 20 C.F.R. § 416.994(b)(5)(vi). If the claimant has the RFC to perform past relevant work, the claimant is not disabled. If the claimant cannot perform their past relevant work, the Commissioner proceeds to step seven.

At step seven, the Commissioner determines whether the claimant is able to perform any other work that exists in the national economy. 20 C.F.R. § 416.994(b)(5)(vii). The Commissioner must show that a significant number of jobs exist in the national economy that the claimant can perform. If the Commissioner meets this burden, the claimant is not disabled.

## THE ALJ'S FINDINGS

At step one of the seven step sequential evaluation process, the ALJ found that plaintiff does not have an impairment or combination of impairments that meets or equals a listed impairment. Tr. 252. At step two, the ALJ determined that plaintiff had medical improvement on April 1, 2019. Tr. 254. At step three, the ALJ found plaintiff's medical improvement occurred by April 1, 2019, and her impairments no longer met or medically equaled the listings of the comparison point decision ("CPD").[2] Tr. 255. At step five, the ALJ determined plaintiff continues to suffer from a "severe" impairment, or combination of impairments, since April 1, 2019. *Id*.

At step six, the ALJ resolved that plaintiff has no past relevant work and has the residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R. § 416.967(b) except:

> "[She] can occasionally climb ramps and stairs, balance, crouch, crawl, stoop, bend, and kneel. [She] cannot climb ladders, ropes, or scaffolds. [She] can frequently handle, finger and feel and has no limitation on reaching bilaterally. [She] should avoid exposure to unprotected heights, dangerous or moving machinery, and machine parts. Additionally, [she] would be capable of work in goal oriented jobs, with simple, routine, and repetitive instructions not done at an assembly line or at a production quota pace, a job in which the individual is limited to occasional decision making, occasional changes of workplace setting and occasional changes to workplace routine, and a job in which she has only occasional contact with supervisors, co-workers, and no contact with customers."

Tr. 256, 263.

---

[2] The CPD is the most recent favorable medical decision finding the claimant was disabled and is used for purposes of determining the claimant's continuing disability. Programs Operations Manual Systems (POMS), DI 28035.015.

Page | 4 – OPINION AND ORDER

At step seven, the ALJ concluded, based on the VE's testimony, there existed a significant number of jobs in the national economy plaintiff could perform despite her impairments, such as housekeeper, small parts assembler, and price marker. Tr. 265.

## DISCUSSION

Plaintiff argues the ALJ erred by: (1) discrediting her subjective symptom testimony; (2) rejecting the medical opinion of Gina Miller, M.D; (3) rejecting the "other" medical source opinion of Robert Nielsen, LCSW; and (4) rejecting the lay witness testimony. Pl.'s Opening Br. 3, ECF 16.

### I.     Plaintiff's Testimony

Plaintiff contends the ALJ erred by discrediting her testimony concerning the extent of her mental health impairments. When a claimant has medically documented impairments that could reasonably be expected to produce some degree of the symptoms complained of, and the record contains no affirmative evidence of malingering, "the ALJ can reject the claimant's testimony about the severity of . . . symptoms only by offering specific, clear and convincing reasons for doing so." *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996) (internal citation omitted). A general assertion the claimant is not credible is insufficient; the ALJ must "state which . . . testimony is not credible and what evidence suggests the complaints are not credible." *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993). The reasons proffered must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995) (internal citation omitted).

Thus, in formulating the RFC, the ALJ is not tasked with "examining an individual's character" or propensity for truthfulness and instead assesses whether the claimant's subjective symptom statements are consistent with the record as a whole. SSR 16-3p, *available at* 2016 WL

1119029. If the ALJ's finding regarding the claimant's subjective symptom testimony is "supported by substantial evidence in the record, [the court] may not engage in second-guessing." *Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002) (internal citation omitted).

At the hearing, plaintiff testified she was unable to work due to cirrhosis of the liver, a heart murmur, irregular heartbeat, a "terrible" tremor in both hands, depression, and post-traumatic stress disorder ("PTSD"). Tr. 287-89. Due to her medication, she has developed the tremors in her hands, which results in her dropping items, such as food off utensils, but does not stop her from driving or using utensils. Tr. 289. Her medications also cause side effects, such as drowsiness, dizziness, and constipation. Tr. 288. When asked about her current medical regimen, plaintiff testified that she gets checkups for her liver and heart every three months, but that she has not seen a mental health professional steadily since 2018 because her provider at the time absconded with his treatment records, and that betrayal of trust impacted her greatly. Tr. 282-83, 288. Since 2018, she has had only three visits with one other mental health provider. Tr. 290. When asked about her activities, plaintiff testified that she runs Narcotics Anonymous meetings twice a week. Tr. 293. When asked about her ability to work, she confirmed that she believed she could work at Goodwill sorting clothes, and that her major barrier was "dealing with people," because she "does not have the patience for it." Tr. 293-94. She also confirmed that she could handle occasional contact with supervisors and co-workers. Tr. 294. When asked about her hygiene, she stated she had no issues taking care of her personal hygiene and needs. *Id*. She also stated she takes care of and plays with her dog, occasionally grocery shops "whenever she needs something," and that she is capable of "cleaning and looking after her own space." Tr. 294-95. When asked about her routine, such as remembering to take her medications, plaintiff testified that she needs reminders, something her mother provides, but that she still sometimes misses taking some of her medications. Tr. 296.

After summarizing the hearing testimony, the ALJ determined that plaintiff's medically determinable impairments could reasonably be expected to produce some degree of symptoms, but her "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." Tr. 257. Regarding plaintiff's physical and mental impairments, the ALJ cited to improvement with treatment, daily activities, and inconsistencies in the medical record. Tr. 256-63.

In discounting plaintiff's mental health impairments, the ALJ acknowledged plaintiff's medical records. Tr. 259-63. For example, the ALJ noted that plaintiff has been diagnosed with bipolar disorder, PTSD, depression, and anxiety. Tr. 259 (citing Tr. 1916, 2112). The ALJ also noted that plaintiff has received some mental health treatment, but the treatment has not been consistent. Tr. 260 (citing Tr. 1836-37, 1838-41, 1844-46, 1918). Notably, these sparse records indicate that plaintiff exhibited normal behavior, judgment, thought processes, and speech, "good" mood and eye contact, appropriate dress and hygiene, and intact cognition. Tr. 260 (citing Tr. 1836-37, 1838-41, 1844-46, 1918). Furthermore, the ALJ also noted that while plaintiff was dropped from counseling services for missing too many appointments, she continued receiving medication management for her mental health medications from 2019 to the present, which resulted in consistent reporting of normal mental health examinations, such as intact fund of knowledge, intact recent and remote memory, appropriate mood and affect, intact judgment and behavior, intact thought processes, and appropriate hygiene and dress. Tr. 260 (citing Tr. 1713, 1944, 1949, 1974, 1983, 1991, 2012, 2021, 2110, 2145, 2165 2112, 2114). The ALJ also noted that while plaintiff complained of mental health impairments, including memory issues, she testified that her only real barrier to working was that she could not deal with the general public

but could tolerate occasional interaction with co-workers and supervisors, as well as having the ability to run Narcotics Anonymous meetings twice a week. Tr. 257 (citing Tr. 293-94).

Plaintiff argues the ALJ failed to identify the testimony found not credible and link it to the evidence supporting that conclusion.[3] Pl.'s Opening Br. 10-13, ECF 16. Plaintiff is incorrect.

The ALJ did more than provide a general summary. As described above, the ALJ acknowledged plaintiff's diagnoses and subsequent symptoms, then provided specific citations to records indicating that plaintiff's suffering was not as severe as alleged. Plaintiff complained of disabling anxiety, depression, PTSD, and memory issues, yet the records indicate that plaintiff consistently presented with normal mood and affect, intact memory, and intact thought processes, fund of knowledge, and recent and remote memory. The ALJ also cited to plaintiff's own admission that she could work with occasional interaction with co-workers and supervisors, but not the general public. Notably, plaintiff does not point to any medical records or testimony that the ALJ failed to consider.

As such, because the ALJ cited at least one legally sufficient reason, supported by substantial evidence, the ALJ did not err in discounting plaintiff's subjective symptom testimony. *Batson v. Comm'r Soc. Sec. Admin.*, 359 F.3d 1190, 1197 (ALJ's evaluation of the claimant's subjective symptom testimony may be upheld even if all the reasons proffered are not valid).

**II.    Medical Opinion Evidence**

Plaintiff asserts the ALJ improperly discredited the medical opinion of Gina Miller, M.D., and the "other" medical source opinion of Robert Nielsen, LCSW.

---

[3] Plaintiff only raises arguments regarding her mental health impairments. Accordingly, this Court only addresses plaintiff's mental health conditions.

Where, as here, the plaintiff's application is filed before March 27, 2017, the old rules apply. At the time of plaintiff's application, there were three types of acceptable medical opinions in Social Security cases: those from treating, examining, and non-examining doctors. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). In general, the opinions of treating doctors are accorded greater weight than those of examining doctors, and the opinions of examining doctors are entitled to greater weight than those of a non-examining doctors. *Id.* To reject the uncontroverted opinion of a treating or examining doctor, the ALJ must present clear and convincing reasons supported by substantial evidence. *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005) (citation omitted). If a treating or examining doctor's opinion is contradicted by another doctor's opinion, it may be rejected by specific and legitimate reasons supported by substantial evidence. *Id.*

"An ALJ can satisfy the 'substantial evidence' requirements by 'setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings.'" *Garrison v. Colvin*, 759 F.3d 995, 1012 ((9th Cir. 2014) (quoting *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998)). Merely stating conclusions is insufficient: "The ALJ must do more than state conclusions. He must set forth his own interpretations and explain why they, rather than the doctors', are correct." *Id*. "[A]n ALJ errs when he rejects a medical opinion or assigns it little weight while doing nothing more than ignoring it, asserting without explanation that another medical opinion is more persuasive, or criticizing it with boilerplate language that fails to offer a substantiative basis for his conclusions." *Id*. at 1012-13 (citing *Nguyen v. Chater*, 100 F.3d 1462, 1646 (9th Cir. 1996)).

Dr. Miller served as plaintiff's primary medical provider. Tr. 281. In the letter Dr. Miller provided, she opined that plaintiff would be incapable of gainful employment due to her cirrhosis with history of ascites, esophageal varices, hyperammonemia, portal hypertension and hepatic

encephalopathy, history of alcohol use and ascending cholangitis, hypothyroidism, mitral regurgitation, PTSD, generalized anxiety disorder with panic attacks, major depressive disorder, borderline personality disorder, spinal stenosis, and medication-induced parkinsonism with tremor. Tr. 4021. Dr. Miller further opined that plaintiff's physical condition would never improve even though her cirrhosis had stabilized, that her mental health created barriers due to poor self-control, and that plaintiff experienced a permanent tremor which would prevent any tasks requiring dexterity. *Id*. Lastly, Dr. Miller believed plaintiff could eventually find employment in her "remote future," as long as she continued getting long-term treatment. *Id*. The ALJ assigned limited weight to Dr. Miller's opinion because determination of disability is an issue reserved to the Commissioner, and her opinion was inconsistent with the overall record.

Plaintiff argues that, regarding her physical impairments, the ALJ's reasoning is problematic because while her liver disease has stabilized, that does not mean it is improved or resolved. Pl.'s Opening Br. 6, ECF 16. Plaintiff further argues that gait, reflexes, range, of motion, and strength are irrelevant to the effects of cirrhosis, which includes weakness and cognitive issues, and physical examinations showed the drug induced parkinsonism supported Dr. Miller's opinion. Pl.'s Opening Br. 7-8, ECF 16. Plaintiff's argument is unavailing.

The ALJ provided a detailed and thorough summary of the facts and conflicting clinical evidence, charting plaintiff's medical records from 2019 through 2023. Tr. 256-63. For example, in July 2019, plaintiff had parkinsonian features, including tremors greater in her right arm than her left, rigidity, and bradykinesia, and no arm swing when walking. Tr. 1881. Plaintiff also reported balance issues without falls, that she has memory issues and trouble remembering things, and that she has not been exercising regularly and has never had physical therapy for her tremors, which was recommended in January 2019, and again in December 2020. Tr. 1719, 1881, 2111.

Plaintiff points to records from January and July 2019, showing mild symmetrical muscle rigidity and mild bradykinesia, mid amplitude and frequency tremor bilaterally with right worse than left, reduced speed walking and reduced stride length, no arm swing on either side while walking, and moderate hypomimia at cranial nerve VII, and an inability to take steps backwards without losing balance. Tr. 1719, 1883-84. Those records also show full strength in her upper and lower extremities, normal gait, stride, and walking speed, and that she could rise from sitting without difficulty or assistance. Tr. 1883-84. Records from 2020 and 2021 also reflect normal physical exam results with no noted tremors. Tr. 2012, 2068, 2095, 2101. As for her liver condition, she was noted as "doing quite well," and was "beginning to look at work options for herself." Tr. 1947. Notably, it is unclear why, according to plaintiff, strength evaluations would be irrelevant when a symptom of plaintiff's purported condition is weakness, something that strength evaluations would show.

Plaintiff also argues that her history of mental health issues supports Dr. Miller's assessments. Pl.'s Opening Br. 7, ECF 16. Plaintiff, however, is incorrect.

Plaintiff points to records noting that she presented with flat affect, was withdrawn with a depressed mood, was anxious, had hypophonic speech, experienced significant irritation and was often on edge, had "no filter" when speaking, had worsening mood swings and PTSD symptoms, was tearful, had two voluntary psychiatric admissions, was easily agitated and feeling out of control. Tr. 77-78, 122, 1718, 1733, 1736, 1840, 1883, 2011-12, 2019, 2110, 2141-42. The ALJ, however, also points to numerous records indicating plaintiff had intact remote and recent memory, logical thought processes, normal mood and affect, proper hygiene and appearance, maintained good eye contact and was cooperative, and was otherwise mentally stable on medication. Tr. 1713, 1944, 1949, 1974, 1983, 1991, 2012, 2021, 2110, 2112, 2114, 2145, 2165.

Given that plaintiff's liver condition had improved, that plaintiff's tremors were not noted again after July 2019, and the conflicting mental health records, the ALJ did not err in discounting Dr. Miller's medical opinion. *Batson v. Comm'r of Soc. Sec.*, 359 F.3d 1190, 1193 (9th Cir. 2004) ("If evidence exists to support more than one rational interpretation, we must defer to the Commissioner's decisions.").

Plaintiff established mental healthcare with Robert Nielsen, LCSW, on June 7, 2019. Tr. 1916. She saw him twice more on July 8, 2019, and February 17, 2020. Tr. 1919-20. Nielsen provided a medical source statement February 17, 2020. Tr. 1921. In his statement, Nielsen stated he had been seeing plaintiff since April 23, 2019, that he saw her once a week, and that she suffered from PTSD and bipolar disorder, which resulted in frequent mood swings, irritability, frustration which can lead to extreme anger and defensiveness. Tr. 1921. He also believed she experienced disorganized thoughts, hyperactivity, excessive worrying, panic attacks, and obsessive thoughts. *Id*. Nielsen noted that she was making progress and responding well to their sessions, such as not being so hard on herself, big picture thinking instead of languishing in her past memories, and the ability to identify and explore multiple options for solving problems in her life. Tr. 1921-22. Even with plaintiff's positive response to treatment, Nielsen believed her symptoms were severe enough that finding and maintaining employment was "near impossible" for her. Tr. 1921. The ALJ granted Nielsen's opinion limited weight because it was inconsistent with the overall record, his own treatment notes, and with plaintiff's testimony. Tr. 262.

Plaintiff argues the ALJ failed to provide germane reasons supported by substantial evidence in order to reject Nielsen's opinion. Pl.'s Opening Br. 13-15, ECF 16. Plaintiff, however, is incorrect.

Under the medical regulations for claims filed before March 27, 2017, only opinions from acceptable medical sources are treated as "medical opinions." 20 C.F.R. § 404.1527(a)(1). Plaintiff acknowledges that Nielsen, as a Licensed Clinical Social Worker, is not an acceptable medical source. *See* Pl.'s Opening Br. 13-15, ECF 16; *see also* 20 C.F.R. § 404.1502(a)(7). Accordingly, the ALJ reviewed Nielsen's opinion as one "from medical sources who are not acceptable medical sources." 20 C.F.R. §§ 404.1527(f). Opinions from acceptable and non-acceptable medical sources are evaluated using the same factors listed in 20 C.F.R. § 404.1527(c)(1)-(c)(6). An ALJ may reject the testimony of a non-acceptable medical source by providing reasons germane to that witness. *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012).

As stated above, the ALJ gave Nielsen's opinion limited weight because it was inconsistent with the overall medical record, his own treatment notes, and plaintiff's testimony. Tr. 262. As support for his finding, the ALJ cited to the inconsistent dates of treatment and the fact that plaintiff was dropped after missing too many appointments. Tr. 262 (citing Tr. 1916-21, 2112, 2114). Nielsen stated that he treated plaintiff once a week, however the dates of his treatment notes show he saw plaintiff three times in total, with a month between her first and second visit, and seven months between her second and third. Tr. 1916-20. Nielsen also states that he began treating plaintiff on April 23, 2019, but no records are included for the date in question. Tr. 1921. Despite the scarce treatment, plaintiff was improving, with Nielsen noting that she went from fair to poor to fair to good before being let go for missing appointments. Tr. 1916-20, 2112, 2114. Following the discontinuation of counseling, plaintiff had generally normal mental health results on medication compliance, including normal thought processes, intact recent and remote memory, good judgment, and normal mood and affect. Tr. 1713, 1944, 1949, 1974, 1983, 1991, 2012, 2021, 2110, 2112, 2114, 2145, 2165. Lastly, at plaintiff's hearing, she admitted her only real barrier was

dealing with the general public, but that she could tolerate occasional interactions with co-workers and supervisors, and the ALJ addressed this issue by incorporating no contact with customers and only occasional interaction with co-workers and supervisors into her RFC. Tr. 256, 293-94.

In sum, the ALJ did not err because he provided reasons germane to the witness.

### III.   Lay Witness Testimony

Lay witness testimony about a claimant's symptoms is competent evidence that an ALJ must consider unless he "expressly determines to disregard such testimony and gives reasons germane to each witness for doing so." *Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001); *Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996) (holding that competent lay witness testimony "*cannot* be disregarded without comment") (emphasis in original). However, where the ALJ has properly discounted the plaintiff's subjective symptom testimony, and the lay witness has not described limitations beyond the allegations of the plaintiff, the ALJ's failure to provide germane reasons in rejecting the lay witness testimony can be harmless. *Molina v. Astrue*, 674 F.3d 1104, 1121-22 (9th Cir. 2012).

In addition to plaintiff's own subjective symptom testimony, plaintiff's mother provided a third-party statement. Tr. 631-38. Plaintiff argues the ALJ erred by disregarding the lay witness statement without "giv[ing] reasons that are germane to each witness." *Dodrill*, 12 F.3d at 919. The Commissioner argues the ALJ properly discounted the lay witness testimony because it was rejected for the same reasons as plaintiff's subjective symptom testimony. Def's Br. 8-9, ECF, 18. The Commissioner is correct.

Plaintiff's mother provided a statement describing plaintiff's condition, noting that her hands shake uncontrollably, she often drops things, she experiences bouts of depression, she needs frequent reminders to take her medication, and cannot prepare her own meals. Tr. 631, 633. She

also noted that plaintiff has no problems paying attention for long periods of time, following written or spoken instructions, and getting along with supervisors. Tr. 636. The ALJ found this third-party statement inconsistent with plaintiff's medical records, inconsistent with her own admissions, and inconsistent with her abilities. Tr. 257, 263.

As discussed above, plaintiff's subjective symptom testimony was properly discounted based on inconsistencies with her medical records, inconsistencies with her abilities, and inconsistencies with her own statements. Therefore, the ALJ did not err in evaluating the lay witness testimony from plaintiff's mother.

## CONCLUSION

For the reasons stated above, the Commissioner's decision is AFFIRMED, and this case is dismissed.

IT IS SO ORDERED.

DATED this 22nd day of July, 2025.

_/s/ Jolie A. Russo_
Jolie A. Russo
United States Magistrate Judge